UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20150-CIV-MARRA

In re

Biscayne Park, LLC.,

    Debtor.
_____/

TERESA CARDENAS,

    Appellant,

v.

MADISON REALTY CAPITAL, L.P.,

    Appellee.
_____/

**OPINION AND ORDER**

    THIS CAUSE is before the Court on the appeal by Appellant Teresa Cardenas ("Appellant") of the Order Determining Adversary Proceeding to Be Included in Sale of Assets, Denying Without Prejudice Motion to Approve Compromise, and Granting Motion to Dismiss Case ("Underlying Order") and the accompanying Opinion of Bankruptcy Judge A. Jay Cristol, entered on October 7, 2011. The Court has carefully considered the briefs of Appellant and Appellee Madison Realty Capital, L.P. ("Appellee") and is otherwise fully advised in the premises.

## I. Background[1]

*A. Wal-Mart Cause of Action*

On November 9, 2006, Biscayne Park, L.L.C. ("Debtor") entered into a Mortgage Note with the Appellee in the amount of $8,150,000.00, which secured the purchase of certain property. Underlying Order at 3. The Debtor acquired the tract of land at a public auction without knowledge that the property had previously sustained widespread environmental impact. Biscayne Park, LLC v. Wal-Mart Stores East, LP, 34 So.3d 24, 25 (Fla. 3d DCA 2010). In March 2007, the Debtor entered into a purchase agreement that permitted Wal-Mart to: (1) conduct due diligence inspections on the property; and (2) terminate the agreement prior to closing if the inspections revealed the land to be unfit for retail use. Id. As part of the inspections, Wal-Mart installed ground water monitoring wells on the property. Id. Wal-Mart terminated the purchase agreement in October of 2007, but the wells remained on the property. Id.

The Debtor subsequently entered into negotiations with another potential buyer, agreeing to allow that buyer use of the wells on the property to conduct its own inspection. Id. Wal-Mart became concerned about potential liability resulting from the use of the wells and sought indemnification from the Debtor, as well as costs related to the installation of the wells. Id. at 25–26. The Debtor rejected Wal-Mart's request, claiming that the wells were permanent fixtures attached to the property that belonged to the Debtor. Id. at 26.

---

[1] Unless otherwise noted, the underlying facts are derived from various documents filed in this docket, the underlying bankruptcy docket, the related adversary proceedings, and a decision by the Third District Court of Appeal in Biscayne Park, LLC v. Wal-Mart Stores East, LP, 34 So.3d 24 (Fla. 3d DCA 2010). These facts, which appear to be undisputed but are derived from mainly adversarial documents, are provided for background purposes only, do not constitute findings of fact by the Court, and shall serve no precedential purpose in future judicial proceedings.

In November 2008, Wal-Mart filed a complaint against the Debtor for declaratory and injunctive relief, and a verified motion for a temporary injunction. Id. As explained by the Third District Court of Appeal:

> Wal–Mart's verified motion requested an order allowing entry onto the property for the purpose of filling and capping the wells. At the time, [the Debtor] was using the wells in its effort to remediate the property as required by a local environmental regulatory agency.
> On December 15, 2008, the trial court entered an order granting Wal–Mart's motion for a temporary injunction. The trial court gave [the Debtor] two options: 1) allow Wal–Mart to "abandon and seal" the wells; or 2) purchase a six-month insurance policy insuring Wal–Mart with respect to the wells in the amount of $20,000,000. Biscayne filed a motion for reconsideration, which the trial court denied, and [an appeal to the Third District Court of Appeal] ensued. Wal–Mart subsequently posted a $230,000 bond and, during the week of January 12, 2009, entered the property and sealed the wells.

Id.

On February 26, 2009, the Debtor filed an Answer, Affirmative Defenses, and Counterclaim to Wal-Mart's Complaint. Case No. 10-BKC-03364-AJC ("Adversary Proceeding Docket"), DE 1 at 8–20. The Counterclaim consisted of three counts: (1) Declaratory Judgment; (2) Conversion; and (3) Trespass. Id. The first count sought a declaratory judgment with regard to ownership of the wells. Id. at 8–10. The second count sought damages associated with Wal-Mart's January 12, 2009, entry onto the property and sealing of the wells. Id. at 10–11. Finally, the third count also sought damages associated with Wal-Mart's January 12, 2009, entry onto the property and subsequent depreciation in value. Id. at 11–12.

On February 17, 2010, the Third District Court of Appeal reversed the trial court's December 15, 2008, Order granting Wal-Mart's request for injunctive relief. Biscayne Park, 34 So.3d at 27. The Third District held: "we conclude that the trial court erred in issuing the injunction, and reverse

3

the December 15, 2008 order entered below.  Moreover, because the wells on Biscayne's property were destroyed following the entry of an improper injunction, on remand Biscayne can proceed against Wal–Mart's posted bond on its claim for damages." Id.

This dispute between the Debtor and Wal-Mart is the center of the appeal presently before the Court.

*B. Background Bankruptcy Proceedings*

On April 26, 2010, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Case No. 10-BKC-20941-AJC ("Main Bankruptcy Docket"), DE 1.  On July 26, 2010, counsel for the Debtor removed the state court proceeding outlined above to bankruptcy court.  Adversary Proceeding Docket, DE 1.  On August 16, 2010, the Bankruptcy Court entered an Order authorizing the Debtor to: (A) use cash collateral; and (B) grant certain liens and adequate protections to Appellee, the holder of the 2006 promissory note.  Bankruptcy Docket, DE 73 ("Cash Collateral Order").  Among other things, the Cash Collateral Order granted Appellee a first priority lien on "all of the real and personal property of [the] Debtor of any description whatsoever, wherever located and whenever arising or acquired . . ."  Id. at Ex. A, ¶ 21.  The Bankruptcy Court noted that "the Cash Collateral Order was . . . consented to by the Debtor (which is controlled by [Appellant]), was not and has never been objected to by [Appellant] or any other person or entity."  Underlying Order at 5.

On October 19, 2010, the Bankruptcy Court entered an Order Granting Motion To Approve Bid Procedures Relating to Sale of the Debtors Assets; Approving the Form and Manner of Notice of Sale by Auction."  Main Bankruptcy Docket, DE 94.  The Bankruptcy Court noted that "the Bid Procedures Order was . . . consented to by the Debtor (which is controlled by [Appellant]), was not

and has never been objected to by [Appellant] or any other person or entity." Underlying Order at 5. The Bankruptcy Court held a hearing to consider the sale of "substantially all of the assets of the Debtor" on December 1, 2010. At that hearing, Appellee bid $1 million to acquire all of its collateral as described in the Cash Collateral Order. Main Bankruptcy Docket, DE 126. Also at that hearing, counsel for Appellee expressly noted that Appellee was "not purchasing [the Wal-Mart bond]. [Appellee is] purchasing choses of action only to the extent [Appellee has] a lien on them under our collateral documents." Id. at 24.

On December 30, 2010, the Bankruptcy Court declared Appellee's bid to be the highest and best bid and entered an Order: (I) Authorizing Sale of Assets and (II) Conveying Assets Free and Clear of Liens, Claims, Encumbrances and Interests. Main Bankruptcy Docket, DE 110 ("Sale Order"). Pursuant to that Order, Appellee acquired, among other items, the following assets:

- All award and payments which may heretofore and hereafter be made with respect to the property in question and any improvements or equipment related thereto. Id. at Ex. A, ¶¶ a-e,
- "All causes of actions and judgments pursuant thereto relating to the [property in question], and all judgments awards of damages and settlements hereafter made resulting from . . . improvements thereon or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets." Id. at Ex. B, ¶ 2.
- "All contract rights, causes of actions, claims, demands of Debtor." Id. at Ex. B, ¶ 4.
- "the right, in the name and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the [property in question and its improvements and to commence any action or proceeding to protect interests in the [property in question and its improvements]. Id. at Ex. C, ¶ h.

The Sale Order also provided that:

> Notwithstanding anything to the contrary contained herein, [Appellee] agrees that the Assets sold to the [Appellee] shall not include: (a) [a specific mobile home]; and (b) the $230,000 supersedeas bond posted by Wal-Mart in Miami-Dade County Circuit Court under Case Number 08-67361 CA 22.

5

<u>Id.</u> at ¶ 6.  The Bankruptcy Court noted that "the Sale Order was . . . consented to by the Debtor (which is controlled by [Appellant]), was not and has never been objected to by [Appellant] or any other person or entity."  Underlying Order at 7.

*C. The Order on Appeal*

On August 23, 2011, Appellee filed an Amended Motion to Approve Compromise.  Main Bankruptcy Docket, DE 148.[2]  Through that Motion, Appellee moved to have the Bankruptcy Court approve a settlement agreement between Appellee, Wal-Mart, and Pecker & Abramson, litigation counsel for the Debtor, with regard to the Adversary Proceeding.  <u>Id.</u>  As part of the agreement, the parties sought to preclude Appellees from suing Wal-Mart and its counsel.  <u>Id.</u> at ¶ 11.  On September 7, 2011, Appellee concurrently filed a Motion to Dismiss (the main bankruptcy case), Main Bankruptcy Docket, DE 151.  That Motion stated:

1. The bankruptcy case should be dismissed for cause.
2. The substantial assets of [D]ebtor have been sold including, apparently, the Debtor-in-possession account.
3. Continuation of the bankruptcy serves no purpose.  The case is, in fact, being continued to achieve purposes not intended by the Bankruptcy Code.
4. The manner in which the case has been administered has rendered all of the post-petition vendors and employees, particularly those that rendered services during the month of December without payment as [Appellee] was allowed to seize all the income for the month of December (2010) without paying any of the bills for the month of December.
5. Furthermore, a valuable counterclaim the Debtor and it's [sic] principles own against Walmart that was pending in the State Court before the filing of the petition in this case has been included in the 'sale of assets' in a confusing manner which was not in fact intended or understood by [Appellant].
6. The continuation of the bankruptcy serves no purpose but to continue to incur multiple levels of fees and costs for which the estate may not be able to recover except through State Court litigation.

---

[2] The initial motion was filed on August 19, 2011 (DE 145), but was amended on August 23, 2011.

6

<u>Id.</u>

Also on September 7, 2011, Appellant filed an Objection to Appellee's Motion to Compromise Controversy, Main Bankruptcy Docket, DE 152. That Motion stated

1. This Court has questionable jurisdiction to approve a settlement between two non-debtors.
2. This settlement has been entered into simply in an effort to protect Walmart and its attorneys who seek a release and a bar order with respect to any claims or causes of actions of [Appellant]. As it is a settlement between parties that does not involve the Debtor, such a bar order exceeds the jurisdiction of the Court, even under § 105(a).
3. Furthermore, [Appellee] purports to be settling the cause of action of the Debtor as represented by the Debtor's counterclaim against Walmart in the state court action and which is now the removed action. This is a cause of action which has been identified as being worth millions of dollars.
4. Madison is seeking this Court's approval of the settlement for an ulterior purpose. One such ulterior purpose is that [Appellee] is seeking a deficiency judgment against [Appellant] and others and is seeking to take their separate property from them under a claimed "deficiency" in the state court. [Appellee] knows that if it settles the claim with Walmart, this will create a defense for [Appellant] and the other guarantor shareholders in the state court action for a deficiency and therefore, [Appellee] is seeking the "approval" of this Court in an effort to clothe this questionable and ulteriorly motivated settlement with some presumption of validity and correctness when it has none.
5. For this Court to approve a settlement under these circumstances would greatly prejudice the estate and movants/interested parties[, the shareholders.]
6. Further, the settlement proposes to distribute the Walmart injunction bond, as if it is the property of [Appellee] and it is <u>not</u> the property of [Appellee].

<u>Id.</u>

On September 14, 2011, the Bankruptcy Court held a hearing on Appellee's Motion to Compromise Controversy, Main Bankruptcy Docket, DE 145/148. Main Bankruptcy Docket DE 154. At that hearing, Appellee set forth two arguments. <u>Id.</u> First, the phrase "contract rights, causes of actions, claims, demands of Debtor" does not apply to the Wal-Mart Cause of Action because that action is one in tort, and the phrase only governs <u>contract</u> causes of action. <u>Id.</u> Second, Appellee

7

argued that the $230,000 supersedeas bond was carved out of the sale of assets and therefore the Wal-Mart Cause of Action was also carved out of the sale of assets.  Id.

On October 4, 2011, the Bankruptcy Court held a separate hearing on Appellee's Motion to Dismiss the Bankruptcy Case (Main Bankruptcy Docket, DE 151).  Main Bankruptcy Docket, DE 200.  At that hearing, Appellant argued that there was nothing left for the Bankruptcy Court to resolve in the Debtor's estate, and that therefore dismissal of the Main Bankruptcy case was warranted.  Id.  Appellee responded that it would not object to the dismissal of the bankruptcy case if the Bankruptcy Court ruled that Appellee did, in fact, purchase the Wal-Mart Cause of Action.  Id. at 10.

Finally, on October 7, 2011, the Court entered the order currently on appeal: an Order Determining Adversary Proceeding to be Included in Sale of Assets, Denying Without Prejudice Motion to Approve Compromise, and Granting Motion to Dismiss Case.  Main Bankruptcy Docket, DE 160.  In that Order, the Bankruptcy Court held that the phrase "contract rights, causes of actions, claims, demands of Debtor" in the Sale of Assets did include the Wal-Mart Cause of Action.  Underlying Order at 8–9.  The Bankruptcy Court also acknowledged that Appellee did not acquire the $230,000 supersedeas bond, but that the bond was completely separate from a cause of action arising out of it.  Id. at 9–10.  Next, the Bankruptcy Court refused to approve the bar order in the settlement agreement because it would bind third-parties (namely Appellant) who was never a party to the settlement negotiations.  Id. at 10.  Because the Court determined that the Adversary Proceeding was transferred by the Debtor to Appellee, and noting no objections to the dismissal of the case, the Court dismissed the main bankruptcy proceeding.  Id.

Appellant now appeals the Underlying Order.

## II. Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In re Club Assoc., 951 F.2d 1223, 1228–29 (11th Cir. 1992).

## III. Discussion

Appellant makes four arguments on appeal: (1) the Wal-Mart Cause of Action was not included in the Sale of Assets because that asset was not specified or mentioned by adversary number; (2) the Wal-Mart Cause of Action was not included in the Sale of Assets because the supersedeas bond was explicitly carved out of the Sale of Assets; (3) the Bankruptcy Court erred in failing to hold an evidentiary hearing to determine whether the Wal-Mart Cause of Action was included in the Sale of Assets; and (4) the Wal-Mart Cause of Action could not be assigned as a matter of law because it was a tort claim.

*1. Inclusion in the Sale of Assets*

The Court begins by concluding that the Bankruptcy Court did not err in concluding that the Wal-Mart Cause of Action was included in the Sale of Assets. The Sale of Assets explicitly provided that "All contract rights, causes of action, claims, demands of Debtor" were included in the sale from the Debtor to Appellee. Main Bankruptcy Docket, DE 110 at Ex. B, ¶ 4. Without providing any authority, Appellant argues that the Sale of Assets needed to explicitly identify the Wal-Mart Cause of Action by its adversary number to be included in the Sale of Assets. The Court agrees with the sound logic of the Bankruptcy Court on this point:

> Here, there is no language which would indicate that "[a]ll contract rights, causes of actions, claims, demands of Debtor" means anything other than what it says and certainly nothing to suggest (as [Appellee argues]) "contract" modifies the entire

9

> phrase. "Contract rights" is a phrase with a generally understood meaning and there is nothing contained within the Sale Order which would lead to the conclusion that the parties or the Court intended any other meaning than its generally accepted meaning. The Court concludes that the word "contract" modifies only the word "rights" and not "causes of actions, claims, and demands of debtor."

Underlying Order at 8–9. Accordingly, the Court rejects this challenge.

*2. Carve Out of the Bond*

Next, Appellant argues that the Wal-Mart Cause of Action was not included in the Sale of Assets because the $230,000 supersedeas bond was expressly carved out from that order. The relevant excerpt from the Sale of Assets provides that:

> Notwithstanding anything to the contrary contained herein, [Appellee] agrees that the Assets sold to the [Appellee] shall not include: (a) [a specific mobile home]; and (b) the $230,000 supersedeas bond posted by Wal-Mart in Miami-Dade County Circuit Court under Case Number 08-67361 CA 22.

Main Bankruptcy Docket, DE 110 at ¶ 6. Both Appellee and the Court agree with Appellant that the bond itself was not included in the Sale of Assets. However, the Bankruptcy Court correctly distinguished the bond from causes of action associated with it. The Sale of Assets expressly provided that all "causes of action" were transferred to Appellee, and nothing in the carve-out provision of the Sale of Assets provides that the Wal-Mart Cause of Action was not intended to be transferred from the Debtor to the Appellee. The bond itself can, and must, be distinguished from the cause of action associated with it based on the plain language of the Sale of Assets. If Appellant objected to the inclusion of the Wal-Mart Cause of Action in the Sale of Assets, it should have objected to the language at that time. Accordingly, this challenge is also rejected.

*3. Failure to Hold an Evidentiary Hearing*

Next, Appellant asserts that the Bankruptcy Court erred when it failed to conduct an

evidentiary hearing on the issue of whether the Wal-Mart Cause of Action was included in the Sale of Assets. The only authority advanced by Appellant in support of this argument is that the relevant orders are subject to different interpretations, and therefore a question of law exists. An interpretation of a bankruptcy court's order, however, is a question of law that can be resolved without an evidentiary hearing. See Bel-Bel Intern Corp. v. Community Bank of Homestead, 162 F.3d 1101, 1110 n. 21 (11th Cir. 1998). Accordingly, this argument is also rejected.

*4. Inability to Transfer Tort Causes of Action*

Finally, Appellant argues that the Bankruptcy Court erred in allowing the sale of the trespass and conversion counterclaims set forth in the Wal-Mart Cause of Action because, as a matter of law, tort claims cannot be assigned. However, the Court need not address the merits of this question because this argument has been waived by Appellant since that issue was never argued before the Bankruptcy Court.

"A litigant waives her right to present an argument on appeal when she fails to present that argument before the bankruptcy court or district court." In re DeGennaro, 315 F. App'x 817, 819 (11th Cir. 2009) (citing First Ala. Bank of Montgomery, N.A., v. First State Ins. Co., Inc., 899 F.2d 1045, 1060 n.8 (11th Cir. 1990)). Here, Appellant argued before the Bankruptcy Court that the sale of assets allowed for the sale of only "contract causes of action" and not tort causes of action. But Appellant never argued before the Bankruptcy Court that tort causes of action are unassignable as a matter of law. Accordingly, Appellant cannot now, for the first time on appeal, argue that the bankruptcy court was unable to assign a tort cause of action as a matter of law.

## IV. Conclusion

For the aforementioned reasons, the Order Denying Motion to Dismiss is **AFFIRMED**.

This case is **CLOSED**. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of September, 2012.

_____
KENNETH A. MARRA
United States District Judge